**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FRANCISCO HUERTERO, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

                    Plaintiff,

          v.

PAPPAS OG LLC, and
DANIELLE JIMENEZ MARINE,

                    Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff FRANCISCO HUERTERO ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, PAPPAS OG LLC d/b/a THE ORIGINAL PAPPAS TAVERNA, (the "Corporate Defendant"), and DANIELLE JIMENEZ MARINE (the "Individual Defendant" and collectively with the Corporate Defendant, the "Defendants") and state as follows:

1

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) disgorgements of illegally retained gratuities, (2) unpaid wages, due to an invalid tip credit policy, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) disgorgements of illegally retained gratuities, (2) unpaid wages, due to an invalid tip credit policy, (3) unpaid spread of hours premiums, (4) unpaid call-in pay premiums, (5) late payments of wages, (6) liquidated damages, (7) statutory penalties due to WTPA violations, and (8) attorneys' fees and costs.

3.      Plaintiff further alleges, on behalf of himself and others similarly situated, that he was deprived of his statutory rights as a result of Defendants' unlawful discriminatory and retaliatory practices, pursuant to the New York State Human Rights Law ("NYSHRL") Executive Law §§ 296 *et seq.*, New York City Human Rights Law ("NYCHRL") Administrative Code of the City of New York §§ 8-107 *et seq.*, and are therefore entitled to additionally recover from Defendants: (1) back wages, (2) compensatory damages for emotional distress, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      Plaintiff, for all relevant time periods, was a resident of New York, New York.

7.      Corporate Defendant PAPPAS OG LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 105 MacDougal Street, New York, NY 10012. Corporate Defendant PAPPAS OG LLC does business as both a restaurant and event venue, providing Greek cuisine, cooking classes, and dance parties with live entertainment.

8.      Individual Defendant DANIELLE JIMENEZ MARINE owns and operates Corporate Defendant PAPPAS OG LLC. Individual Defendant MARINE exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant MARINE—by herself or through managerial staff—exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By herself or through managerial staff, Defendant MARINE would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant MARINE exercised functional control over Defendant's business and its financial operations.

9.      At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

10.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

3

## FLSA COLLECTIVE ACTION ALLEGATIONS

11.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all tipped non-exempt front-of-house persons (including servers, bussers, bartenders, runners, barbacks, and waiters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

12.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their unpaid wages, including overtime, due to Defendants' invalid tip credit policy and illegal tip retention policy.

13.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

14.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all tipped non-exempt front-of-house persons (including servers, bussers, bartenders, runners, barbacks, and waiters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

15. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

16. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of employees ("Discriminated Subclass") subject to Defendants' discriminatory policies towards non-Albanians, who also number more than forty (40). Plaintiff is a member of both the Class and the Discriminated Subclass.

17. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' unlawful withholding of gratuities through an invalid tip pooling scheme, an invalid tip credit policy, Defendants' late payments of wages, Defendants' failure to compensate Plaintiff and Class Members with call-in pay premiums, Defendants' failure to compensate Plaintiff and Class Members with spread of hours premiums and Defendants' unlawful misappropriation of the tips that they earned.

18. With regard to Plaintiff and the Discriminated Subclass, they are also subject to the same corporate practices of Defendants, as alleged herein, of (1) unlawful discriminatory and retaliatory practices, pursuant to the New York State Human Rights Law ("NYSHRL"), and (2) unlawful discriminatory and retaliatory practices, pursuant to the New York City Human Rights Law ("NYCHRL"). Plaintiff and the Discriminated Subclass similarly suffered from Defendants' discriminatory and retaliatory policies, because Defendants: (i) segregated Albanian staff from non-Albanian staff; (ii) allocated more tips to Albanian staff than non-Albanian staff; (iii) disciplined non-Albanian staff more harshly than Albanian staff; and (iv) only let non-Albanian staff eat their meal after their Albanian coworkers did.

19. Plaintiff is both able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in class action litigation, employment litigation, and discrimination cases, and have previously represented plaintiffs in both wage and hour and discrimination cases.

20. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing

the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding hiring and terminating Plaintiff and Class Members;

d) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

e) Whether Defendants compensated Plaintiff and Class Members in a timely manner;

f) Whether Defendants required Plaintiff and Class Members to spend over 20% of their shift doing non-tipped work;

g) Whether Defendants unlawfully deducted tip credits in amounts greater than those authorized under the NYLL;

h) Whether Defendants unjustly discriminated against Plaintiff and the Discriminated Subclass;

i) Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

j) Whether Defendants illegally retained gratuities to pay other employees;

k) Whether Defendants properly compensated Plaintiff and Class Members with their call-in premiums; and

l) Whether Defendants provided Plaintiff and Class members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

m) Whether Defendants provided Plaintiff and Class members with proper wage statements with each payment of wages, as required by New York Labor Law.

**STATEMENT OF FACTS**

*Plaintiff's Employment Background*

23.    In or around May 2024, Plaintiff was hired by Defendants to work as a Busser at Defendants' Pappas New York, located at 105 MacDougal Street, New York, NY 10012. In March 2025, Plaintiff was promoted and worked as a Waiter until May 2025, when he was terminated.

24.    From May 2024 to January 2025, Plaintiff was scheduled to work four days a week, Thursdays through Sundays, from 4:00 p.m. to 2:00 a.m., for a total of forty (40) hours a week. From January 2025 to the end of his employment, Plaintiff was scheduled to work two days a week, from 4:00 p.m. to 2:00 a.m., for a total of twenty (20) hours a week.

25.    Throughout his entire employment, Plaintiff was paid by Defendants at rates below the New York State tip credit minimum wage. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

*Illegal Retention of Gratuities*

26.    Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' illegal retention of gratuities, in violation of the FLSA and the NYLL.

27.    At all relevant times, Defendants utilized a tip pool whereby non-tipped employees, who did not provide tipped services to Defendants' clients, were included. These non-tipped employees included managers.

28.    Plaintiff's, FLSA Collective Plaintiffs' and Class Members' tips and gratuities are covered under the meaning of § 196-d of the NYLL. In New York, "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities and other surcharges or fees, received by an employee, or

retain any part of a gratuity or of any charge purported to be a gratuity for an employee." § NYLL 196-d.

29.    Defendants knowingly and willfully operated their business with a policy of unlawfully retaining gratuities earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

*Unpaid Spread of Hours Premiums*

30.    At all relevant times, Defendants failed to provide spread of hours premiums to Plaintiff and Class Members for shifts in which the spread of hours exceeded ten (10) hours.

31.    Plaintiff regularly worked shifts with a spread of hours exceeding ten (10) hours. Under 12 N.Y.C.R.R § 146-1.6, when the spread of hours for any day exceeds ten hours, an employee shall receive one additional hour of pay at the basic minimum hourly wage rate. Defendants failed to pay Plaintiff and Class Members this spread of hours premium.

32.    Class Members who were required to work shifts with a spread of hours in excess of ten (10) hours were similarly not paid any spread of hours premiums.

33.    Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums for shifts exceeding ten (10) hours, in violation of the NYLL.

*Late Payment of Wages*

34.    At all relevant times, Defendants regularly failed to timely pay Plaintiff and Class Members.

35.    Almost every week, Defendants compensated Plaintiff and Class Members with their wages approximately two (2) to three (3) days late because the paychecks issued by Defendants were returned for insufficient funds and/or otherwise bounced. Additionally,

10

approximately four (4) times during their employment with Defendants, Defendants compensated Plaintiff with his wages two (2) weeks late.

36.      Plaintiff and Class Members are manual workers. Plaintiff and Class Members spent the majority of their workdays performing duties that required sustained physical effort. For Plaintiff, these duties included carrying heavy trays of food and drinks, standing for extended periods of time, bussing and clearing tables, polishing and rolling silverware, sweeping the restaurant, cleaning windows, and preparing and cutting vegetables throughout shifts lasting at least ten (10) hours. Due to their status as manual workers, Plaintiff and Class Members are entitled to weekly compensation pursuant to NYLL § 191(1)(a).

37.      Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their proper wages on a weekly basis, in violation of the NYLL.

*Plaintiff's Invalid Tip Credit Policy Claims*

38.       Throughout their employments, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' invalid tip credit policy, in violation of the FLSA and the NYLL.

39.      Throughout Plaintiff's employments, Defendants deducted a tip credit from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages.

40.      However, Defendants were not actually entitled to deduct any tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages under the FLSA or the NYLL because Defendants: (i) deducted tip credits in excess of the amount permitted by law, paying Plaintiff at a cash wage rate of $10.00 per hour when the applicable statutory minimum cash wage for tipped employees was no less than $11.00 per hour; (ii) deducted tip credits from Plaintiff's,

11

FLSA Collective Plaintiffs', and Class Members' wages for all hours worked despite having caused them to engage in non-tipped duties for over 20% of their workweeks; and (iii) subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to an invalid tip pool.

41.    As a direct result of Defendants' invalid tip credit policy, Plaintiff and Class Members were paid below the New York State minimum wage in violation of the NYLL. *See* 12 N.Y.C.R.R. § 146-1.2, *et seq.*

42.    Throughout Plaintiff's employments, Defendants required Plaintiff to engage in non-tipped duties such as polishing and rolling silverware, sweeping the restaurant, cleaning windows, preparing and cutting vegetables, among others. Plaintiff would spend 2 to 10 hours per single shift doing non-tipped side work. Because Plaintiff's single shifts were at least 10 hours long, Plaintiff's non-tipped side work always took up from 20% (1/5) to 100% of Plaintiff's hours worked. Defendants also required FLSA Collective Plaintiffs and Class Members to engage in similar non-tipped side work for similar amounts of time.

43.    Additionally, Plaintiff and Class Members never received any notices from Defendants that Defendants were claiming a tip credit on their weekly compensation.  They were never told by Defendants that Defendants were deducting tip credits from their wages nor did they ever receive proper notice by Defendants as to the amount of tip credit allowances Defendants deducted for each payment period during their employments.

44.    In addition to the above, Defendants unlawfully deducted tip credits beyond the statutory cap. For example, in 2025, Defendants compensated Plaintiff at an hourly rate of $10.00, when the applicable statutory minimum cash wage for tipped employees was no less than $11.00 per hour. *See* **Exhibit A**, Sample of Plaintiff's Wage Statements. FLSA Collective Plaintiffs and

12

Class Members were similarly compensated at tip credit rates below the applicable tip credit minimum wage.

45.     Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages, in violation of the FLSA and the NYLL.

*Plaintiff's Claims of Unpaid Call-in Pay Premiums*

46.     Throughout his employment, Plaintiff would occasionally be sent home shortly after arriving at Defendants' restaurant for his scheduled shift, but Defendants would not provide Plaintiff with his call-in pay premiums. Similarly, Class Members were sent home from their scheduled shifts without receiving the call-in pay premiums to which they were entitled.

47.     Defendants knowingly and willfully operated their business with a policy of not paying call-in pay premiums to Plaintiff and Class Members, in violation of the NYLL.

*WTPA Claims*

48.     At all relevant times, Plaintiff and Class Members never received wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

49.     In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

50.     New York Courts continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

51.     Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, and their earned wages, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

52.     By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment

14

benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

53.    Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving.  Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

54.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

*Unlawful Discrimination and Retaliation Claims*

55.    Plaintiff is a man of Hispanic descent.

56.    The Discriminated Subclass are all individuals who are not of Albanian descent.

57.    Plaintiff and the Discriminated Subclass were subject to racial discrimination on a daily basis by Defendants, and ultimately retaliated against and terminated due to such discrimination.

15

58. Throughout his employment, Plaintiff noticed that he and his non-Albanian coworkers were treated unfairly compared to their Albanian coworkers. Every lunch, the rest of the staff was segregated from the Albanian staff. The Albanian staff members sat at a separate table that was much larger and nicer than the table of which the rest of the staff members sat at. The rest of the staff members were not allowed to sit at the Albanian staff members' table.

59. Throughout his employment, Plaintiff observed that non-Albanian employees were rarely promoted and, when they were promoted, were often terminated shortly thereafter. For example, Plaintiff was promoted to waiter in or about March 2025. Because Defendants generally did not promote non-Albanian employees, Plaintiff's promotion was unusual. Shortly after receiving the promotion, Plaintiff was terminated without explanation. Defendants' lack of genuine consideration for employees who were not of Albanian descent and their unwillingness to promote such employees is further demonstrated by the fact that, after Plaintiff's termination, Defendants repeatedly rehired and terminated him. On four separate occasions, Defendants rehired Plaintiff, only to terminate him again one to two weeks later. After this pattern repeated four times, Plaintiff declined further offers of reemployment. As a result of Defendants' abrupt and discriminatory employment decisions, Plaintiff was unable to maintain stable employment and suffered economic hardship.

60. Throughout his employment, Plaintiff additionally observed that his Albanian coworkers were assigned more favorable shifts and received a greater share of points under Defendants' tip pool system. As a result, Albanian employees consistently received higher tip distributions than non-Albanian employees.

61. Throughout his employment, Plaintiff additionally noticed that he and his non-Albanian coworkers were disciplined more harshly compared to their Albanian coworkers.

16

Plaintiff often witnessed non-Albanian staff get written up for trivial issues that their Albanian coworkers would not get written up for. Meanwhile, Plaintiff would witness Albanian coworkers commit serious faults without discipline. Had a non-Albanian staff member committed a similar fault, Defendants would not respond in the same manner.

62.    All members of the Discriminated Subclass were also subject to similar treatment.

63.    As a result of Defendants' discrimination and retaliation, Plaintiff and the Discriminated Subclass suffered from lost wages, anxiety, and past and future emotional distress.

64.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

65.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

66.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

67.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

68.    At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

17

69. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper tips, due to Defendants' illegal tip retention policy.

70. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, due to Defendants' invalid tip credit policy.

71. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation (including tips) paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

72. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their tips, when Defendants knew or should have known such was due.

73. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

74. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

75. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid gratuities, illegally retained gratuities, and liquidated damages.

76.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

77.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

78.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

79.     Defendants willfully violated Plaintiff's and Class Members' rights by illegally retaining their rightfully earned gratuities.

80.     Defendants willfully violated Plaintiff's and Class Members' rights by frequently paying their wages in an untimely manner.

81.     Defendants willfully violated Plaintiff's and Class Members' rights by maintaining an invalid tip credit policy.

82.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to provide them with spread of hours premiums.

83.     Defendants failed to compensate Plaintiff and Class Members with their call-in pay premiums, in direct violation of the NYLL.

84.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

85.     Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages, illegally retained gratuities, unpaid spread of hours premiums, unpaid call-in pay premiums, late payment damages, reasonable

19

attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

### DISCRIMINATION UNDER THE
### NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq.*)**
**(brought on Plaintiff's and the Discriminated Subclass's behalf only)**

86.     Plaintiff realleges and incorporates all the above allegations as against all Defendants, as if fully set forth herein.

87.     The New York State Executive Law § 296(1)(a) provides that:

"It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

88.     Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff and the Discriminated Subclass on the basis of their race. Plaintiff's manager regularly subjected Plaintiff and the Discriminated Subclass to racial discrimination.

89.     This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

90.     As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff and the Discriminated Subclass suffered damages in the form of lost past and future emotional distress. Plaintiff and the Discriminated Subclass seek all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

20

## COUNT IV

## RETALIATION UNDER THE
## NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq*.)**
**(brought on Plaintiff's behalf only)**

91.    Plaintiff realleges and incorporates all the above allegations as against all Defendants, as if fully set forth herein.

92.    New York State Executive Law § 296(7) provides that:

"It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate. . . against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

93.    As alleged herein, Plaintiff was retaliated against by Defendants by means of disparate treatment and unjust termination due to being the victim of racial discrimination.

94.    This retaliatory conduct was in willful disregard of the provisions of the NYSHRL.

95.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of past and future emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

21

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of disgorgement of all improperly distributed tips, due under the FLSA and the NYLL;

d.  An award of unpaid wages, due to Defendants' invalid tip credit policy, due under the NYLL;

e.  An award of unpaid spread of hours premiums, due under the NYLL;

f.  An award of call-in pay premiums due under the NYLL;

g.  An award of all applicable damages to Plaintiff and Class Members for Defendants' late payments of wages;

h.  An award of all applicable damages to Plaintiff for Defendants' retaliation against him;

i.  An award of all applicable damages to Plaintiff and the Discriminated Subclass for Defendants' violation of laws prohibiting race discrimination;

j.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage statement requirements;

k.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

l.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

m.  An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

n.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o.  Designation of this action as a class action pursuant to F.R.C.P. 23;

p.  Designation of Plaintiff as Representative of the Class, including the Discriminated Subclass; and

q.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: July 15, 2026                                      Respectfully submitted,
       New York, New York

                                              **LEE LITIGATION GROUP, PLLC**
                                              C.K. Lee (CL 4086)
                                              Anne Seelig (AS 3976)
                                              148 West 24th Street, 8th Floor
                                              New York, NY 10011
                                              Tel.: 212-465-1188
                                              Fax: 212-465-1181

                                              *Attorneys for Plaintiff,*
                                              *FLSA Collective Plaintiffs,*
                                              *and the Class*

By:     */s/ C.K. Lee*
             C.K. Lee, Esq.